45 So.3d 627 (2010)
Glenn CATTLES
v.
ALLSTATE INSURANCE COMPANY, et al.
No. 2009-CA-1576.
Court of Appeal of Louisiana, Fourth Circuit.
August 4, 2010.
Rehearing Denied September 15, 2010.
*628 Joel Waltzer, Waltzer & Associates, Harvey, LA, for Plaintiff/Appellee, Glenn Cattles.
John I. Hulse IV, John A. Stewart, Stuart G. Richeson, Hulse & Wanek, APLC, New Orleans, LA, for Defendant/Appellant, Allstate Insurance Company.
(Court composed of Judge DENNIS R. BAGNERIS, SR., Judge TERRI F. LOVE, Judge DAVID S. GORBATY, Judge EDWIN A. LOMBARD, Judge PAUL A. BONIN,)
DAVID S. GORBATY, Judge.
Allstate Insurance Company appeals a judgment notwithstanding the verdict rendered against it in favor of Glenn Cattles. For the following reasons, we reverse.

PROCEDURAL HISTORY:
Glenn Cattles was involved in a vehicular accident on October 21, 1999. Mr. Cattles, an employee of Brown's Dairy, was riding in a milk delivery truck to supervise the delivery of milk to Orleans Parish Schools. The driver of the truck was an independent contractor of Brown's Dairy, and maintained his own insurance. As the milk truck proceeded through a controlled intersection, a driver on the cross street ran the red light and was broad-sided by the milk truck. Mr. Cattles complained to the milk truck driver that he was hurt[1], but left the scene with *629 another Brown's Dairy employee and returned to work. He did not seek medical attention for his injuries.
Mr. Cattles settled with GEICO Insurance Company, the insurer of the offending vehicle's driver. He filed suit against Allstate, the insurer of the milk truck driver, for uninsured/underinsured coverage.
Following a jury trial, a verdict was rendered awarding Mr. Cattles past medical expenses only; there was no award of general damages. Both sides filed motions for judgment notwithstanding the verdict. The trial court denied Allstate's motion, but granted plaintiff's motion, awarding $50,000 in general damages, minus a credit for payments already received by Mr. Cattles.
Allstate has filed this appeal seeking a reversal of the JNOV, and a reduction of the medical expense award made by the jury.

FACTS:
The incident sued upon occurred on October 21, 1999. Mr. Cattles did not seek medical attention for knee problems until December 13, 1999. At that time, he saw Dr. McSween, a family practitioner, who testified at trial that Mr. Cattles gave a history of his right knee popping as he squatted two days before the visit. Mr. Cattles did not tell Dr. McSween about the subject accident. Dr. McSween testified that he would have noted a history of an automobile accident because of potential litigation, but his chart did not so reflect. Upon medical examination, Dr. McSween noted moderate swelling and tenderness of the medial collateral ligament. Dr. McSween testified that if Mr. Cattles' knee had been dislocated, it would have shown on the x-ray. The doctor diagnosed a sprained medial collateral ligament, and prescribed an anti-inflammatory, pain medication, application of ice and use of a knee brace to immobilize the knee. Mr. Cattles returned on December 27, 1999, with continued complaints of pain. His knee was still tender. He reported that he was not wearing the prescribed knee brace. Dr. McSween told him to continue the same treatment. Mr. Cattles did not see Dr. McSween again for knee problems. On cross-examination, Dr. McSween testified that in his medical opinion, Mr. Cattles did not have a dislocated knee.
Maria Cattles testified that following the October 21 accident, she continually asked her husband to seek medical attention. She said he finally saw Dr. McSween in December of 1999 because of problems related to the October 21 accident. Mrs. Cattles told the jury about an incident in August of 2000, when she, her husband, their son, and a friend had to cram into the backseat of a taxi in Paris. Mr. Cattles complained that his knee was being "crushed." She testified that she did not know that her husband was taken to the hospital following a May 2000 accident, in which he crashed her car into a porch going 25 miles per hour.[2] In fact, she did not know that her husband had been treating with a doctor for his knee since the May 2000 accident. She testified that because of his knee problems, her husband does not use his boat or walk for exercise anymore.
Mr. Cattles testified that he did not seek medical treatment for the subject accident because he thought the pain would subside. He did not fill out any type of injury report with his employer Brown's Dairy. He did not use the knee brace or take the pain medication prescribed by Dr. *630 McSween because it impaired his ability to drive and his general mobility. When he saw Dr. McSween in December 1999, he did not give a history of the October 21 accident because he had no intention of filing suit. He only told Dr. McSween that he injured his knee while squatting two days earlier.
Despite the doctor's notes contained in the emergency room and the x-rays taken following the May 2000 accident, Mr. Cattles denied that he complained of knee pain at the hospital. He insisted that the EMT told the emergency room doctor about a complaint of knee pain; he only complained of neck and back pain. However, he did admit that the doctor "played with" his joints, popping his knee in and out. He also admitted that the doctor wrapped his knee with a support bandage. According to Mr. Cattles, the report of "contusion to right knee" in the discharge notes referred to a bruise still present from the October 1999 accident.
Dr. John Watermeier, a board certified orthopedic, testified for the plaintiff. Some of his testimony was from notes taken by Dr. Manale, who had initially treated Mr. Cattles, but retired sometime during the treatment. Dr. Watermeier assumed plaintiff's care, and performed the knee surgery of September 12, 2002.
At plaintiff's first visit, February 22, 2000, Dr. Manale noted a history of a vehicular accident in October 1999. An MRI taken on March 29, 2000, did not indicate a dislocated patella, but did reveal chondromalacia and a small effusion. Dr. Watermeier testified that chondromalacia, a degenerative condition, would have been present prior to the October 1999 accident. Notwithstanding the negative MRI result, Dr. Manale's initial diagnosis of Mr. Cattles knee complaints was a recurrent dislocated patella.
Mr. Cattles' next visit was on May 30, 2000. Dr. Manale again diagnosed a dislocation of the patella. Dr. Watermeier explained that the MRI does not show an actual dislocation; rather, it would show soft tissue injury as a result of a dislocation. Dr. Watermeier stated that he would have diagnosed a chronic recurrent dislocation, a condition that does not automatically warrant surgery. Physical therapy would be indicated to restore ligament stability and tightening of the muscles that support the knee. Records indicate that Mr. Cattles was referred to physical therapy by Dr. Manale, and that he attended six sessions in the spring of 2000.
Dr. Watermeier testified that the next visit was March 12, 2002. Mr. Cattles gave a history of the May 2000 accident. He told the doctor that he had hit his knee. Mr. Cattles complained that his knee would pop and click and sometimes give way, which Dr. Watermeier explained were subjective complaints. The doctor did not know if these complaints were caused by the May 2000 accident, or if the May 2000 accident exacerbated a previous injury.
At a March 15, 2002, visit, the examination revealed mild crepitation, which the doctor explained felt like sandpaper rubbing when he manipulated the knee joint. On July 16, Dr. Watermeier diagnosed internal knee derangement (IKD), which he described as unidentifiable symptoms and abnormalities. Normally, injuries associated with IKD would show up on an MRI, but were not indicated on Mr. Cattles' MRI. Nonetheless, Dr. Watermeier recommended surgery. On September 2, 2002, Mr. Cattles was cleared for surgery, which was performed on September 12, 2002.
Dr. Watermeier testified that the arthroscopic examination revealed a mild degree of synovitis (inflammation of the lining of the joint), mild chondromalacia (a *631 degenerative condition marked by softening of the cartilage), and evidence of subluxation syndrome (a condition which allows the patella to leave its normal track and dislocate). The doctor explained that this condition can only be observed arthroscopically; it would not be revealed on an x-ray or MRI. He noted a large plica (rubber band-like tissue inside the knee that with injury can become painful), and repaired a torn medial meniscus. On cross-examination, he opined "... based on the fact that the MRI [of March 2000] did not show a meniscus tear until it's noted after his May 2000 accident, then I would say that's probably correct, that the May 2000 accident was the cause of the medial meniscus tear." Dr. Watermeier stated that he could not say with certainty that the October 21, 1999 accident caused the meniscus tear, especially in light of the negative March 2000 MRI and the May 2000 automobile accident. However, it was his opinion that the October 1999 accident aggravated the chondromalacia, which was debrided during the surgery.
The post-operative examination revealed full mobility of the knee, with ligament stability. Dr. Watermeier assigned a five percent disability to Mr. Cattles' right knee.

STANDARD OF REVIEW:
A motion for judgment notwithstanding the verdict (JNOV) is defined by La.Code Civ. Proc. art. 1811. The article allows for JNOV on the issue of liability or damages, or both. Jurisprudence limits the application of the JNOV doctrine to cases where the jury's verdict is absolutely unsupported by any competent evidence. Sciambra v. Jerome Imports, Inc., 05-0260, p. 5 (La.App. 4 Cir. 12/14/05), 921 So.2d 145, 149; Boudreaux v. Schwegmann Giant Supermarkets, 585 So.2d 583, 586 (La.App. 4 Cir.1991). A JNOV is warranted when the facts and circumstances point so strongly and overwhelmingly in favor of one party that the court believes that reasonable persons could not arrive at a contrary verdict, not merely when the trial court finds that there is a preponderance of the evidence in favor of the mover. Where there is evidence opposed to the motion of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, the motion should be denied. Anderson v. New Orleans Public Service, Inc., 583 So.2d 829, 832 (La.1991); Sciambra, supra. When deciding a JNOV, the trial court should not evaluate the credibility of witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. Id.
In reviewing a JNOV on appeal, a two-part inquiry is necessary. First, the appellate court must determine if the trial court erred in granting the JNOV. The appellate court uses the same criteria as the trial court in deciding whether or not to grant the motion, i.e., do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial court was correct in granting the motion. If, however, reasonable persons exercising impartial judgment could reach a different conclusion, then it is error to grant the motion and the jury's verdict should be reinstated. Torrejon v. Mobil Oil Co., 03-1426, p. 10 (La.App. 4 Cir. 6/2/04), 876 So.2d 877, 885. Second, "[a]fter determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review." Torrejon, supra, citing Martin v. Heritage Manor South Nursing Home, 00-0123, at p. 6, at n. 7, (La.4/3/01), 784 So.2d at 632.

*632 DISCUSSION:
According to jurisprudence, we must first examine whether the trial court erred in granting plaintiff's JNOV.
The jury was asked: "Did the automobile accident of October 21, 1999 cause any injuries to plaintiff, Glenn Cattles?" It answered in the affirmative. Next, the jury was asked: "What amount, in dollars and cents will fully and fairly compensate Glenn Cattles for injuries caused by the accident of October 21, 1999?" The jury awarded nothing for pain and suffering, and $31,270.73 for past medical expenses. These expenses were the total amount of medicals presented at trial.
In granting Mr. Cattles' JNOV, the judge opined that "reasonable persons could not reach the conclusion that Mr. Cattles did not sustain a knee injury which was not caused by the subject accident."
Allstate cites to numerous cases in which our courts have determined that it is not error for a jury to award medical expenses, without awarding general damages. The preeminent case cited is Wainwright v. Fontenot, 00-0492 (La.10/17/00), 774 So.2d 70, in which the Supreme Court reconciled conflicting decisions among the circuits. Ultimately, the Supreme Court decided:
While at first glance these two lines of cases[3] appear to be contradictory, close scrutiny of the court's rationale in each of the cases reveals that the particular facts of each case are ultimately determinative. There is no question that the rationale of the Robinson line of cases relied upon by the court below has been employed by the courts of appeal in any instances. And we do not dispute that, as a general proposition, a jury verdict such as the one currently before us may be illogical or inconsistent. However, as demonstrated by the Coleman and Olivier cases, a jury in the exercise of its discretion as factfinder, can reasonably reach the conclusion that a plaintiff has proven his entitlement to recovery of certain medical costs, yet failed to prove that he endured compensable pain and suffering as a result of defendant's fault. It may often be the case that such a verdict may not withstand review under the abuse of discretion standard. However, it would be inconsistent with the great deference afforded the factfinder by this court and our jurisprudence to state that, as a matter of law, such a verdict must always be erroneous. Rather, a reviewing court faced with a verdict such as the one before us must ask whether the jury's determination that plaintiff is entitled to certain medical expenses but not to general damages is so inconsistent as to constitute an abuse of discretion. Only after the reviewing court determines that the factfinder has abused its much discretion can that court conduct a de novo review of the record.
* * *
In this case, the jury apparently did not believe that pain and suffering, for example, or missed work, resulted from the injury which [defendant] caused. It did believe that medical and incidental expenses were incurred as a result of the injury, and it awarded damages for those claims. The jury made its determinations, and it is not for this court, *633 absent evidence of unfairness, mistake, partiality, prejudice, corruption, exorbitance, excessiveness, or a result that is offensive to the conscience and judgment of the court, to disturb them.
Wainwright, 00-0492, pp. 8-9, 774 So.2d at 76-77.
Applying the first part of two-part inquiry for review of a JNOV, we find the trial court erred in granting plaintiff's motion. Our review of the record reveals no facts or inferences that point so strongly in favor of Mr. Cattles that the reasonable persons of the jury could not have found as they did.
Mr. Cattles testified that he did not seek medical help after the October 21, 1999 accident, until December 1999, because he believed his discomfort following the subject accident would resolve itself. He saw Dr. McSween in December 1999, relating a squatting accident two days earlier. Dr. McSween had no knowledge of the subject accident. Mr. Cattles first saw Dr. Manale in February 2000, and gave a history of the October 21, 1999 accident. His symptoms were subjective and a subsequent MRI was negative for soft tissue damage. In May 2000, Mr. Cattles was involved in a second automobile accident, which resulted in emergency room treatment, including the wrapping of his knee. Mr. Cattles' wife testified about a European vacation in August 2000, during which her husband experienced pain after being "crammed" into the back seat of a taxi.
It was not until July 2002 that Dr. Watermeier recommended surgery, which was performed in September. During the entire time between the October 1999 accident and the September 2002 surgery, Mr. Cattles did not miss any work, other than for vacation. His wife testified that he no longer used his boat or walked for exercise, but there is no evidence that he was medically precluded from any physical activity because of his knee.
Accordingly, we find that Mr. Cattles' surgery was precipitated by an unrelated accident, and that the subject accident only aggravated a pre-existing condition, which Dr. Watermeier testified would not warrant surgery on its own.
Additionally, we note that the original judgment rendered upon the jury verdict ordered that Allstate be given a $10,000 credit for payment from the tortfeasor's insurer. That amount is imputable to general damages.
We therefore reverse the granting of the JNOV, and reinstate the jury's verdict.
REVERSED.
BAGNERIS, J., Dissents.
LOVE, J., Dissents and Assigns Reasons.
BAGNERIS, J., Dissents.
I respectfully dissent for the reasons assigned by J. Love.
LOVE, J., Dissents and Assigns Reasons.
I respectfully dissent from the majority's opinion, in that I find the facts of Wainwright v. Fontenot, 00-0492 (La.10/17/00), 774 So.2d 70, distinguishable from the present case and would affirm. Wainwright established that a factfinder may properly find a defendant legally at fault for a plaintiff's injuries and award medical expenses without awarding general damages under the specific facts and circumstances of the case. Wainwright, 00-0492, p. 11, 774 So.2d at 78. In Wainwright, the jury partially awarded medical expenses, but did not award general damages for three days of an incorrect dosage of Prozac and an overnight hospital stay *634 for observational purposes. Id., 00-0492, pp. 2-4, 774 So.2d at 72-73.
However, in the present case, the jury heard all of the testimony and found that the 1999 accident caused injuries to Mr. Cattles. The jury then awarded the total amount of Mr. Cattles' medical expenses presented at trial, which included the cost of surgery. Pain and suffering is inherent with surgery and/or the possibility that the 1999 accident "exacerbated plaintiff's right knee injury," as stated by the trial court judge. Mr. Cattles testified regarding his knee pain and subsequent surgery over two years after the 1999 accident. Once the jury factually determined that the 1999 accident caused injury to Mr. Cattles and awarded full medical damages, the jury's verdict became inconsistent without any award for general damages.
The majority makes a factual finding that "Mr. Cattles' surgery was precipitated by an unrelated accident, and that the subject accident only aggravated a pre-existing condition." The trial court's reasons for judgment state: "Because this accident may have exacerbated plaintiff's right knee injury, the Court awards $50,000 in general damages." I find that the trial court awarded damages for Mr. Cattles' general pain and suffering, as opposed to the majority's apparent holding that "only" aggravating a pre-existing condition does not warrant general damages. The trial court reviewed the record and found that reasonable persons could not conclude that Mr. Cattles did not have pain and suffering, even if "only" from an aggravated pre-existing condition. Therefore, I do not find that the trial court erred by granting the JNOV and would affirm.
NOTES
[1] The milk truck driver was not called by either party to testify at trial, although it was stipulated that he made the statement in a deposition.
[2] Contrary to her testimony, evidence was introduced indicating that Mrs. Cattles had actually signed the medical release form at the hospital following her husband's May 2000 accident.
[3] Robinson v. General Motors Corp., 328 So.2d 751 (La.App. 4 Cir. 1976), Bienvenu v. State Farm Mut. Auto. Ins. Co., 545 So.2d 581 (La. App. 5 Cir. 1989), and, Charles v. Cecil Chatman Plumbing & Heating Co., 96-299 (La. App. 3 Cir. 10/23/96), 686 So.2d 43, contra Coleman v. U.S. Fire Ins. Co., 571 So.2d 213 (La.App. 3 Cir. 1990), Olivier v. Sears Roebuck & Co., 499 So.2d 1058 (La.App. 3 Cir. 1986).