LOBRANO, Judge.
Plaintiff, Medhi Basham, appeals the trial court judgment dismissing his claim for injuries allegedly sustained while working for the Sheraton Hotel at a function aboard the MTV Creole Queen. We affirm.
On April 26, 1986, plaintiff was employed by the Sheraton Hotel as a waiter and was working at a function being catered by the Sheraton aboard the M/V Creole Queen, a vessel owned and operated by the defendant New Orleans Paddlewheels, Inc. The plaintiff was assisting other Sheraton employees in loading trays of food from the shore onto the Creole Queen when he allegedly slipped and fell in some gravy and water on one of the stairwells on the outside of the vessel.
Plaintiff initially filed suit against LeBoeuf Brothers Towing Company and its liability insurer claiming that LeBoeuf was the owner and operator of the MTV Creole Queen. He then amended his suit to add as defendants the M/V Creole Queen, and New Orleans Paddlewheels, Inc., who plaintiff claimed was the owner and operator of the vessel despite *291 the contrary allegation in his original petition that LeBoeuf Brothers was the owner. In this amended petition, plaintiff also named as defendants the Sheraton Operating Corporation d/b/a Sheraton New Orleans Hotel and its liability insurer. Plaintiff alleged that he was either a covered employee under the Longshore and Harbor Worker’s Compensation Act (LHWCA), 33 U.S.C. § 901 et seq., in the sole employ of the Sheraton or a seaman and member of the crew of the M/V Creole Queen.
The Sheraton filed a motion for summary judgment arguing that plaintiff was not entitled to seaman status and that his only remedy against his employer was in worker’s compensation. This motion was granted and plaintiffs suit against the Sheraton was dismissed. Prior to trial, plaintiff dismissed his suit against the Creole Queen, LeBoeuf Brothers Towing Company and its liability insurer. Plaintiffs only remaining claim was against the vessel owner, New Orleans Pad-dlewheels, Inc.
After trial, the jury determined that New Orleans Paddlewheels did not breach any duty owed plaintiff and that it had exercised reasonable care under the circumstances. Accordingly, the trial court dismissed plaintiffs action. This appeal followed.
Plaintiff argues that defendant owed and breached its duty to provide a safe place to work because it maintained control of the vessel during the cargo operations. Defendant argues that the evidence is uncontro-verted that it had no control or supervision over the loading area and that it had no duty to inspect the area once the Sheraton employees began their loading operations.
The issue on appeal is whether the jury findings are clearly wrong.[1] We affirm.
Section 5(b) of the Longshoremen and Harbor Worker’s Compensation Act provides a statutory negligence action against the shipowner by a longshoreman who sustains injuries during employment aboard the vessel. However, that section abolishes any claim based on unseaworthiness. 33 U.S.C. 905(b). The LHWCA fails, however, to specifically define those acts or omissions which would constitute actionable negligence. Scindia Steam Navigation Co. Ltd. v. DeLos Santos, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981).
In Scindia, supra, the U.S. Supreme Court recognized that, “[a]s a general matter, the shipowner may rely on the stevedore to avoid exposing the longshoremen to unreasonable hazards.” Scindia, at 451 U.S. 170, 101 S.Ct. at 1623. The Court then defined the shipowner’s duties under Section 905(b). Those duties were accurately summarized in Hill v. Texaco, Inc., 674 F.2d 447, 451 (5th Cir. 1982), as follows:
“First, before the stevedore begins his work, a shipowner must exercise care to make safe the portions of the ship that it turns over to the stevedore. In discharging this duty the ship may rely on the stevedore’s performing its task with reasonable care. The shipowner must also warn the stevedore of hidden unsafe conditions on the ship of which the ship is, or should be, aware.
Second, once the stevedore begins its operations, the shipowner has no general duty to supervise work or to inspect the area assigned to the stevedore, unless custom, contract, or law imposes such a duty on the shipowner. The shipowner need not monitor the stevedore’s operations; rather, the shipowner is entitled to rely on the stevedore’s expertise and reasonableness.
Third, the Supreme Court made an exception to the general absence of a duty of this shipowner to protect employees of the stevedore during cargo operations. The duty arises when two conditions are ful *292 filled. If the shipowner becomes aware during the stevedore’s work that the ship or its gear poses a danger to the longshoremen, and if the shipowner also learns that the stevedore is acting unreasonably in failing to protect the longshoremen against the danger, then the shipowner acquires a duty to intervene and protect the longshoremen. The shipowner can have knowledge of a defect if the defect develops during the stevedore’s operations and the shipowner had actual knowledge, or if the defect exists at the outset and the ship ‘must be deemed’ to have knowledge of it.” (footnotes omitted) (emphasis ours)
In Helaire v. Mobil Oil Co., 709 F.2d 1081 (5th Cir.1983), the Fifth Circuit further interpreted Scindia to hold that “once loading operations have begun, the vessel owner can be held liable for injuries of employees of the stevedore resulting from open and obvious dangers only in the event of actual knowledge of the danger and actual knowledge that he cannot rely on the stevedore to remedy the situation.” Id. at 1038.
Plaintiff claims that his accident occurred during the period of time in which food was being loaded onto the MTV Creole Queen. The testimony of Allan Collins, captain of the M/V Creole Queen, and Mario DaSilva, plaintiffs supervisor, established that the section of the vessel where the Sheraton employees were loading and serving food, including the stairway where plaintiff allegedly fell, was roped off to both passengers and crew members.
Both of these witnesses also stated that when the caterer is aboard the vessel, the responsibility for cleaning spills belongs to the stewards hired by and brought on the ship by the caterer. The testimony of these two witnesses was that the deckhands employed by the vessel are responsible for inspecting and cleaning the vessel only before the caterer boards the vessel and after the caterer has left the vessel.
Although the evidence showed that plaintiff filled out an accident report provided by the Sheraton, Captain Collins was not told of the accident until weeks later. In fact, there is no evidence that any employee of the Creole Queen was notified of the spillage on a stairway on the day of the accident. Plaintiff did not present any evidence to show that after the loading operations began, the vessel owner had actual knowledge of the alleged spill on the stairs or that he could not rely on the stevedore to remedy the situation. Mr. DaSilva, Sheraton’s director of banquet services, testified that the area was clean throughout the time that the Sheraton employees were aboard the vessel.
In view of this evidence, we conclude that the jury’s determination that New Orleans Paddlewheels breached no duty owed to plaintiff is fully supported by the record. Once the food loading operations began, the vessel owner had no duty to inspect or monitor the operations of the Sheraton and both the Sheraton’s director of banquet services and the vessel captain agreed that Sheraton stewards were responsible for cleaning spills while the Sheraton employees were on the vessel. The evidence established that the vessel was clean when the Sheraton employees boarded. No evidence was presented to show that any employee of the vessel owner had knowledge of any spillage in the area of the stevedoring operation or had any reason to believe that the stevedore would not clean any spills as they occurred. Based on these facts, we find no error in the trial court judgment dismissing plaintiffs suit.
Plaintiff also argues that the trial court erred in limiting the testimony of two witnesses, James Hickman and Captain Allan Collins. During the questioning of Mr. Hickman, a Sheraton waiter who worked with plaintiff on the day of the accident, he was asked “Who is the person in supreme authority aboard a vessel?” Defense counsel objected on the grounds that no foundation had been laid. Plaintiffs counsel argued the fact that this witness had ten years of experience working on vessels qualified him to answer the question. The trial judge sustained the objection. The ruling was correct.
Later, during the questioning of Captain Collins, plaintiffs counsel asked him if he agreed with four other witnesses who allegedly testified that nobody was assigned to keep the outside stairs on the ship clean. Defense counsel objected and argued that *293 the question was a miseharaeterization of the other witnesses’ testimony. The trial judge sustained the objection. The judge told plaintiffs counsel that he could ask this witness a direct question but could not characterize the testimony of the other witnesses in the question because it was the jury’s responsibility to recall the testimony of the other witnesses. That ruling was also correct.
Additionally, the defendant argues that it should be awarded costs and attorney’s fees for plaintiffs appeal because it is frivolous. However, the record indicates ' that defendant did not appeal the trial court judgment or answer the plaintiffs appeal. Therefore, defendant’s claim for damages for frivolous appeal is not properly before this court and will not be considered. Humphrey v. Humphrey, 614 So.2d 837 (La.App. 2nd Cir.1993).
AFFIRMED.

. We recognize that on March 30, 1993 this Court handed down Forrest v. Waterman Steamship Corp., 617 So.2d 59 (La.App. 4th Cir.1993) which held that in general maritime cases the federal standard of review is applicable. However, on March 31, 1993 another panel of this court, in Young v. Armadores de Cabotaje, S.A., 617 So.2d 517 (La.App. 4th Cir.1993) held that appellate review in maritime cases filed in state court was governed by state law. Neither case cited this court's prior decision in Osorio v. Waterman S.S. Corp., 557 So.2d 999 (La.App. 4th Cir. 1990) where we held that the federal standard of "clearly erroneous” was the proper standard of review.