liLOBRANO, Judge.
Plaintiff, Uganda Poole, appeals the granting of summary judgment in favor of defendant Tidewater Enterprises. We affirm.
On June 3,1991, plaintiff was employed by Rosel, Inc., formerly Hutco, Inc., as a sandblaster/painter on the MTV Sheridan Tide which was undergoing extensive repairs and renovations at Quality Shipyards. Rosel, Inc. was a subcontractor of Quality Shipyards (“Quality”), the general contractor for the repair and renovation project. The vessel was owned by Tidewater Enterprises (“Tidewater”). While working on the deck of this vessel on the date in question, plaintiff allegedly fell through an open hatch[1] and suffered injuries. Plaintiff filed suit against several parties, including Tidewater.
Tidewater filed a motion for summary judgment. In support of its motion, Tidewater filed a memorandum, plaintiffs deposition, a March 31,1989 work contract between Hutco, Inc. and Quality Shipyards, a January 3, 1991 work contract between Hutco, Inc. and Rosel, Inc., the first aid report for plaintiffs accident, the affidavit and deposition of Tidewater repair and maintenance manager URichard Carline, a May 28,1991 letter from Tidewater Marine Service Project Engineer Dan Gaiennie to Consultant A1 Weber, and the invoice of Quality Shipyards to Tidex for items shipped to the M/V Sheridan Tide. In opposition, plaintiff filed a memorandum and the deposition of Richard Carline.
The trial judge granted Tidewater’s motion and dismissed plaintiffs claims against it. Plaintiff appeals from that judgment.

LAW:

a) Summary Judgment
Appellate courts review summary judgments de novo and use the same criteria as the trial court. Schroeder v. Board of Supervisors, 591 So.2d 342 (La.1991); Kantack v. Progressive Insurance Company, 618 So.2d 494 (La.App. 4th Cir.1993), writ denied, 620 So.2d 845 (La.1993). Summary judgment is proper only if the pleadings, depositions and affidavits show there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La.C.C.P. art. 966(B); Thornhill v. Black, Sivalls and Bryson, Inc., 394 So.2d 1189 (La.1981). The burden is on the mover to prove the absence of any genuine issue of material fact. Any doubt shall be resolved against the mover and in favor of a trial on the merits. Raine v. CECO Corporation, 627 So.2d 713 (La.App. 4th Cir.1993). Inferences to be drawn from underlying facts contained in the materials before the Court must be viewed in the light most favorable to the party opposing the motion. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981).
To satisfy his or her burden, the mover has to clearly show the truth of the facts asserted. That showing must exclude any real doubt as to the existence of any genuine issue of material fact. Vermilion Corp., supra. The Igmover’s pleadings, affidavits and documents must be scrutinized closely while those of the opponent are treated indulgently. Urbeso v. Bryan, 583 So.2d 114 (La.App. 4th Cir.1991). Supporting and opposing affidavits shall be made on personal knowledge and set forth facts that would be admissible *413 in evidence. La.C.C.P. art. 967; Urbeso, supra. Ultimate facts and conclusions of law contained in supporting affidavits cannot be considered in granting summary judgment. Urbeso, supra.
Summary judgment is not to be used as a substitute for trial on the merits. Brister v. Parish of Jefferson, 393 So.2d 883 (La.App. 4th Cir.1981). Any doubt shall be resolved in favor of a trial on the merits. Urbeso, supra. Only when reasonable minds must inevitably conclude that the mover is entitled to a judgment as a matter of law on the facts is summary judgment warranted. Thornhill, supra; Chaisson v. Domingue, 372 So.2d 1225 (La.1979). The Court should not seek to determine whether it is likely that the mover will prevail on the merits, but rather whether there is an issue of material fact. Good v. Fisk, 524 So.2d 203 (La.App. 4th Cir.1988).
b) 33 U.S.C. 905(b)
Both parties agree that this action is controlled by 33 U.S.C. § 901 et seq., the Longshore and Harbor Workers’ Compensation Act (LHWCA). Specifically under 33 U.S.C. Sec. 905(b) a longshoreman’s exclusive remedy for personal injury against the shipowner is an action for negligence. Bergeron v. Main Iron Works, Inc., 563 So.2d 954 (La.App. 1st Cir.1990), writ denied, 569 So.2d 965 (La.1990). In order to establish vessel negligence, the Ulongshoreman/plaintiff must prove that the shipowner breached a duty owed to him. Id. at 957. We explain that duty.
In Basham v. Trinity Industries, 625 So.2d 290, 291 (La.App. 4th Cir.1993), writ denied, 93-2713 (La. 1/28/94), 630 So.2d 787, reconsideration denied, 93-2713 (La. 5/6/94), 637 So.2d 1041, we summarized the applicable law regarding 905(b) negligence claims against vessel owners by longshoremen who sustain injuries while working aboard the vessel. We stated:
In Scindia, supra, [Scindia Steam Navigation Co. Ltd. v. DeLos Santos, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981) ] the U.S. Supreme Court recognized that, “[a]s a general matter, the shipowner may rely on the stevedore to avoid exposing the longshoremen to unreasonable hazards.” Scindia, at 451 U.S. 170, 101 S.Ct. at 1623. The Court then defined the shipowner’s duties under Section 905(b). Those duties were accurately summarized in Hill v. Texaco, Inc., 674 F.2d 447, 451 (5th Cir.1982), as follows:
“First, before the stevedore begins his work, a shipowner must exercise care to make safe the portions of the ship that it turns over to the stevedore. In discharging this duty the ship may rely on the stevedore’s performing its task with reasonable care. The shipowner must also warn the stevedore of hidden unsafe conditions on the ship of which the ship is, or should be, aware.
Second, once the stevedore begins its operations, the shipowner has no general duty to supervise work or to inspect the area assigned to the stevedore, unless custom, contract, or law imposes such a duty on the shipowner. The shipowner need not monitor the stevedore’s operations; rather, the shipowner is entitled to rely on the stevedore’s expertise and reasonableness.
Third, the Supreme Court made an exception to the general absence of a duty of this shipowner to protect employees of the stevedore during cargo operations. The duty arises when two conditions are ^fulfilled. If the shipowner becomes aware during the stevedore’s work that the ship or its gear poses a danger to the longshoremen, and if the shipowner also learns that the stevedore is acting unreasonably in failing to protect the longshoremen against the danger, then the shipowner acquires a duty to intervene and protect the longshoremen. The shipowner can have knowledge of a defect if the defect develops during the stevedore’s operations and the shipowner had actual knowledge, or if the defect exists at the outset and the ship ‘must be deemed’ to have knowledge of it.” (footnotes omitted) (emphasis ours)
The Scindia holding has been held to apply to ship repairers as well as to stevedores. Bergeron v. Main Iron Works, Inc., supra.

*414
ARGUMENTS:

Plaintiff argues that summary judgment was inappropriately granted because questions of fact remain as to whether the open hatch through which he fell constituted an unreasonable danger and whether defendant had knowledge of that danger. Defendant argues that there is no factual question in dispute which could arguably support a 905(b) vessel negligence claim by plaintiff for three reasons: (1) the hazardous condition was created after defendant turned over the deck portion of the vessel to Quality, (2) defendant did not remain in active control of the vessel, and (3) defendant did not have a duty to intervene in the work being conducted by plaintiff because it did not have actual knowledge of the alleged hazardous condition which existed during the sandblasting operation.
Plaintiff claims that certain statements contained in the deposition of Tidewater employee Richard Carline raise sufficient factual issues which preclude summary judgment. Specifically, plaintiff argues that Carline’s presence on the 1 (¡vessel during the repair work raises a question as to whether Tidewater (through Carline) retained control of the vessel so as to subject it to liability under 33 U.S.C. § 905(b). The defendant argues, and the trial judge agreed, that Tidewater had already relinquished control of the vessel to Quality when plaintiff’s accident occurred. The trial judge stated in his reasons that Carline’s presence on the vessel during the repair work did not negate the fact that Quality had control of the vessel at the time of the accident.

ANALYSIS:

A review of the evidence in support of and in opposition to the motion for summary judgment shows, first, that there is no genuine issue of fact on the question of control of the portion of the vessel at issue. The deck portion of the vessel was turned over to Quality by Tidewater two to three weeks before plaintiffs accident. Second, there are no allegations, evidence or argument that the open hatch existed when Tidewater turned over the deck portion of the vessel to Quality. Third, Richard Carline’s physical presence on another part of the vessel during the repair operations did not constitute any active control by him or Tidewater over the Quality repair project on which plaintiff was working. Nothing in Carline’s deposition suggests that he acted in any supervisory capacity over Quality’s sandblasting work nor has plaintiff submitted any evidence sufficient to raise a factual question on this point.
Finally, the evidence is uncontroverted that no Tidewater employee, including Car-line, was aware that the hatch was open during the sandblasting operation until after the accident occurred. Plaintiffs deposition confirms this fact. He stated that only he and three other sandblasters were on the deck at the 17time of his accident and that he did not see any Tidewater personnel in the area. Although Carline did state that he saw the hatch open several days earlier when shipyard employees were installing a fire monitor, he did not know that it was left open after that particular job was finished. Thus, there was no duty on behalf of the shipowner to intervene after it surrendered control because there is no evidence to suggest that Carline had actual knowledge of a hazard on the day of the accident or that the ship repairer had failed to protect its employees against the danger. Under the circumstances, Tidewater was justified in relying on Quality to avoid exposing its sandblasters to unreasonable hazards such as the open hatch.
In sum, there is no genuine issue of fact with respect to: (1) Tidewater’s relinquishing control of the vessel, or that portion where the accident occurred, knowing of a dangerous condition, (2) Tidewater’s lack of supervision or control of the work performed by plaintiff and (3) Tidewater’s lack of actual knowledge of a hazardous condition, i.e. the hatch, so as to require intervention on its part in the work performed by plaintiff and the other sandblasters. Accordingly, we affirm the trial court judgment.
AFFIRMED.

. The record is unclear as to whether the hatch was intended to be a permanent part of the vessel or whether it was cut to facilitate work on the vessel after it was placed in the shipyard.