| 1SCHOTT, Chief Judge.
Plaintiff was injured while he was working on a barge owned by Cheramie and chartered by Falgout. Plaintiff was employed by Ocean Marine, the owner of the boat yard where the barge was being converted into a seagoing warehouse pursuant to a contract between Ocean Marine and Falgout. Plaintiff’s claim and that of the intervening compensation carrier against Falgout and Cheramie under the Longshore and Harbor Workers Compensation Act (LHWLA), 33 USC Section 905(b) were dismissed on a motion for summary judgment. Plaintiff and intervenor have appealed. The issue is whether there is any genuine issue, of material fact precluding summary judgment. Finding none, we affirm.
Plaintiff was injured while working as a sandblaster/welder/painter employed by Ocean Marine at its yard in Amelia, LA., In the course of the barge conversion project, plaintiff was assigned to welding duties on the bow of the barge. At the close of one day, another Ocean Marine employee, David Duet, asked plaintiff to assist him in removing the basket from the floor of the forklift. The deck surrounding the forklift was strewn with debris. Plaintiff approached the forklift and removed a safety screw which was securing the basket to the forklift. He then attempted to remove the basket off the forks. When the basket proved to be too heavy, plaintiff and Duet decided to move the forklift away from the debris and set the basket on the deck. Plaintiff turned to walk to a *521 less cluttered area while the forklift followed. Just as the forklift began to move, Jerrel Brunet, another ROcean Marine employee warned Duet of a 4x4 piece of lumber beneath the wheels of the forklift. Duet drove the forklift over the lumber. When the rear wheel hit the lumber, the fork lift tipped forward, causing the basket to fall forward towards plaintiff. He- tried to deflect the basket away from him, and injured his arm.
In rendering summary judgment, the trial judge gave reasons for judgment finding that Scindia Steam Nav. Co., Ltd. v. De Los Santos, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981) was applicable and that the following facts were uncontradieted:
“ .... the active operations duty applies when the owner is involved directly in the activities that brought about plaintiffs injury. In this ease, everyone involved in the accident was an employee of Ocean Marine, and the forklift and lumber which created the hazardous condition were provided, operated and under the exclusive control of Ocean Marine. There was absolutely no active involvement by defendants in any other circumstances which caused plaintiffs injuries.”
The Scindia case involved the application of Section 905(b) of the LHWCA to the situation where a vessel is under the control of a stevedore. In Poole v. Quality Shipyards, Inc., 95-1381 (La.App. 4 Cir. 1/19/96), 668 So.2d 411, writ denied, 96-0405 (La.3/22/96), 669 So.2d 1215, this court held that Scindia applies to a situation as in the instant case where a vessel is under the control of a repairer or contractor.
The limited principles from Scandia governing the duties of a vessel owner towards employees such as plaintiff were summarized as follows in Hill v. Texaco, Inc., 674 F.2d 447 (5th Cir.1982):
1.Before the stevedore begins his work, a shipowner must exercise care to make safe the portions of the ship that it turns over to the stevedore. In discharging this duty, the ship may rely on the stevedore’s performing its tasks with reasonable care. The shipowner must also warn the stevedore of hidden, unsafe conditions on the ship of which the ship is, or should be, aware.
132. Once the stevedore begins its operations, the shipowner has no general duty to supervise work or to inspect the area assigned to the stevedore, unless custom, contract or law imposes such a duty on the shipowner. The shipowner need not monitor the stevedore’s operations; rather, the shipowner is entitled to rely on the stevedore’s expertise and reasonableness.
3. The Supreme Court made an exception to the general absence of a duty of the shipowner to protect employees of the stevedore during cargo operations. The duty arises when two conditions are fulfilled. If the shipowner becomes aware during the stevedore’s work that the ship or its gear poses a danger to the longshoremen, and if the shipowner also learns that the stevedore is acting unreasonably in failing to protect the longshoreman against the danger, then the shipowner acquires a duty to intervene and protect the longshoremen. The shipowner can have knowledge of a defect if the defect develops during the stevedore’s operations and the shipowner has actual knowledge, or if the defect exists at the onset and the ship “must be deemed” to have knowledge of it. (emphasis supplied)
While a ship owner is responsible for eliminating the dangerous conditions which exist at the outset of the operations, it has no duty by way of supervision or inspection to exercise a reasonable care to discover dangerous conditions that develop within the confines of the stevedoring (construction) operations.
Courts have considered certain factors in determining whether a vessel owner has a duty to intervene. These include:
1. Whether the danger was open and obvious;
2. Whether the danger was located on the ship or ship’s gear;
3. Which party created the danger or used the defective item and was therefore in a better position to correct it;
4. Which party owned and controlled the defective items;
*522 5. Whether an affirmative act, negligence or acquiescence in the use of a dangerous item occurred;
6. Whether the shipowner assumed any duty with |4regard to the dangerous item.
If the danger was an open and obvious transitory condition created by the stevedore or contractor, the duty to intervene does not exist. The vessel owner must have actual knowledge not only that a dangerous condition exists but also actual knowledge that the stevedore is not acting to protect the longshoreman (ship repairer in this case). See Fontenot v. U.S., 95-40890 (5th Cir. 7/9/96); 89 F.3d 205. A vessel owner must control or create the circumstances leading to a longshoreman’s injury for vessel liability to be imposed.
In this court plaintiff contends that Scin-dia does not apply because Falgout had not turned over to Ocean Marine exclusive control of the barge. He cites language from Bell v. Bean & Weeks, Inc., 1993 WL 408339 (E.D.La.) in which a district judge stated that a shipowner owed a duty to the repairer if it was actively involved in the conversion operations or if it maintained control over the walkway where plaintiff fell. He points to conflicts in the testimony of the witnesses concerning the number of times Falgout’s representative, Bailey, came to the yard and the extent of his involvement in the work as examples of genuine issues of material fact.
There is no dispute that Bailey was not on the scene of and had nothing whatsoever to do with the circumstances of plaintiff’s accident. However, he contends that the language of the district judge in the Bell case would establish liability on Falgout if Falgout through Bailey was somewhat involved in the overall barge conversion operations even though Falgout had no control over the forklift, the lumber, and the actions taken by plaintiff and the forklift operator and even though all this was under the exclusive control of Ocean Marine through its employees. The Bell case is clearly distinguishable on its facts and has no application to the instant case.
Under the “active operations duty”, the legal standard set forth in the second _5Scindia exception, a vessel owner has a duty to “exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas or from equipment, under the active control of the vessel owner during the stevedoring operation.” A vessel owner does not violate an active control duty if there is no evidence that the owner had active control over the area where the injury occurred. See Burchett v. Cargill, Inc., 94-30156 (5th Cir. 3/29/95); 48 F.3d 173.
In Poole v. Quality Shipyards, Inc., supra, plaintiff was employed as a sand/blaster by a company doing repairs on a vessel. He fell through an open hatch of a vessel and suffered injuries. He filed suit against the ship owner under the LHWCA. The vessel owner moved for summary judgment arguing that there was no factual question in dispute which could support a 905(b) vessel negligence claim. This court upheld the trial court’s granting of summary judgment finding that there was no factual issue in dispute as to the question of control of the portion of the vessel at the time. The deck portion of the, vessel had been turned over by Tidewater, the owner, two weeks prior to the accident. There was no allegations, evidence or argument that the open hatch existed when Tidewater turned over the deck portion of the vessel to the repairer. The physical presence of a Tidewater employee on another part of the vessel during the repair operations did not constitute any active control by him or Tidewater over the repair project on which plaintiff was working. Nothing in that employee’s deposition suggested that he had acted in any supervisory capacity over the sandblasting work nor had the plaintiff submitted any evidence sufficient to raise a material of fact on this point. There was also no evidence that the Tidewater employee was aware that the hatch was open during sandblasting operation until after the accident occurred.
For the reasons stated, we have concluded that Scindia does apply and that there are no genuine issues of material fact precluding summary judgment. Plaintiff’s case is based upon an erroneous interpretation of Scindia and its progeny |6with the result that the factual issues he identifies are not material to *523 the resolution of this case. Accordingly, the judgment appealed from is affirmed.

AFFIRMED.