JAMES F. McKAY III, Chief Judge.
11This is a contract case, which deals, with claims of breach of fiduciary duty and legal malpractice. The plaintiffs, Spyridon C. Contogouris and Stephen A. Baldwin, seek review- of the trial court’s decision to maintain an exception of res judicata filed by the defendants, John W. Houghtaling, II and the law firm of Gauthier, Houghtal-ing & Williams LLP. For the following, reasons, we affirm the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY
During the early 1990’s,' Spyridon Con-togouris worked with Kevin Costner to market a centrifuge technology developed by Mr. Costner. Theoretically, this technology could be used in the cleanup of oil spills. Following the Deepwater Horizon drilling rig explosion in the Gulf of Mexico on April 17, 2010, Mr. Contogouris saw an opportunity to market the centrifuge technology to British Petroleum (BP), the party responsible for cleaning up the oil spill.
| aMr. Contogouris, John W. Houghtaling, II and Franco Valobra entered into a joint venture .agreement, creating Ocean Thera *20 py Solutions, LLC, (OTS) for the purpose of marketing the centrifuge technology. Mr. Houghtaling was named the chief executive officer of OTS. Additional members were also brought into OTS. These included: Westpac Resources, LLC, owned by Mr. Costner and Patrick Smith; oil executive Frank Levy; and Stephen Baldwin.
On May 13, 2010, OTS was registered with the Louisiana Secretary of State and an exclusive marketing contract was signed with C.I.N.C. Industries (CINC), the company that had acquired the centrifuge technology from Mr. Costner. However, soon thereafter, the members began to have disagreements about the OTS business plan. Some of the members, such as Mr. Contogouris and Mr. Levy, wanted the company to use a business model which would ensure recurring business and the possibility of marketing the technology to other major oil companies, while other members, such as Mr. Houghtaling and Mr. Smith, wished to make a one-time sale of the technology to BP at a higher price.
On June 7, 2010, Mr. Houghtaling, Mr. Smith and Mr. Costner met with Doug Suttles, BP’?s point man for overseeing the cleanup operations. Mr. Suttles committed to order $52 million worth of centrifuge units from OTS and signed a letter of intent indicating that BP would make an advance deposit of $18 million with the order. Mr. Contogouris and Mr. Baldwin allege that they were excluded from this meeting and that Mr. Houghtaling advised them that there was no deal with BP.
|sOn June 11, 2010, Mr. Contogouris-and Mr. Baldwin signed a transfer, withdrawal, release and indemnity agreement, transferring their collective 38% interest in OTS to Mr. Smith upon the payment of $1.9 million.[1] Mr..Smith paid 10% of the price on that date with the remainder paid on June 18, 2010. The transfer agreement called for an effective date of when executed by Signing Members who own in the aggregate 60% or more Percentage of Interest in OTS,” and further reflected the current percentage of ownership in OTS as of that date: Contogouris — 28%; Baldwin — 10%; Valobra — 5%; Houghtaling— 37% and Westpac — 20%. Smith, on behalf of Westpac, and Houghtaling also executed the transfer agreement on June 11, 2010.
On June 12, 2010, BP issued a purchase order for $52 million to OTS, including a commitment to make an $18 million advance deposit. On June 16, 2010, BP made the advance deposit. Mr. Conto-gouris and Mr. Baldwin allege that they did not learn of the agreement between BP and OTS until July of 2010.
On December 22, 2010, Mr. Contogouris and Mr. Baldwin filed suit against West-pac, Mr. Smith, Mr. Costner and Rabo-bank, N.A. in a lawsuit styled Contogouris, et al v. Westpac Resources, LLC, et al. (2:10-cv-4609) in the United States District Court for the Eastern District of Louisiana, seeking to invalidate the transfer agreement based upon fraud. However, prior to the trial on the merits in the federal case, Mr. Contogouris and Mr. Baldwin filed the lawsuit that is the subject of the instant appeal on June 17, 2011, naming OTS, Mr. Houghtaling and LGauthier, Houghtaling and Williams LLP (GHW) as defendants and alleging: (1) conversion, conspiracy, abuse of rights, abuse of process, and detrimental reliance against OTS, Mr. Houghtaling and GHW; (2) recovery of sales commissions and recovery of distributions made after plaintiffs transferred their interest in OTS; and *21 (3) breach of fiduciary duty and legal malpractice against Mr. Houghtaling and GHW.[2] In response, the defendants raised a number of exceptions, including: prescription, res judicata, no cause of action and no right of action.
These éxceptions came for hearing before the trial court on March 27, 2012. On May 10, 2012, the trial court sustained in part and overruled in part a number of the exceptions. However, the trial court did not rule on the exception of res judicata at this time. Thereafter, on June 4, 2012, the federal Contogouris lawsuit was tried by jury and resulted in a verdict in favor of the defendants and against the plaintiffs. This verdict was ultimately affirmed by the U.S. Fifth Circuit Court of Appeals on December 17, 2013. On January 8, 2015, the defendants filed a supplemental memorandum in support of their peremptory exception of res judicata in the instant case and set the matter for a hearing. A hearing on the exception was held on January 22, 2015, at which time, the trial court sustained the exception. The trial court issued a written judgment and written reasons for judgment on February 13, 2015. It is from this judgment that the plaintiffs now appeal.
^DISCUSSION
The standard of review for a ruling sustaining an exception of res judicata is manifest error when the exception is raised prior to the case being submitted and evidence is received from both parties. Jones ex rel. Jones v. GEO Group, Inc., 08-1276 (La.App. 3 Cir. 4/1/09), 6 So.3d 1021, 1024, citing State ex rel. Sabine River Auth. v. Meyer & Assocs. Inc., 07-215 (La.App. 3 Cir. 10/3/07), 967 So.2d 585. Under the manifest error standard, on review, the appellate court must be cautious not to re-weigh the evidence or to substitute its own factual findings just because it would have decided .the case differently. See Bonin v. Ferrellgas, Inc., 03-3024 (La.7/2/04), 877 So.2d 89, 94-95; see also Ambrose v. New Orleans Police Dept. Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216, 221.
The doctrinp of res judicata precludes re-litigation of all causes of action arising out of the same transaction or occurrence that were the subject matter of a prior litigation between the same parties. See Oliver v. Orleans Parish School Bd., 14-0329, 14-0330, pp. 20-21 (La.10/31/14), 156 So.3d 596. La. R.S. 13:4231, Louisiana’s res judicata statute provides:
Except as otherwise provided by law, a valid and final judgment is conclusive between the parties, except on appeal or other direct review, to the following extent:
(1) If the judgment-is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
h(3) A' judgment in favor of either the . plaintiff or the defendant is conclu *22 sive, in. any subsequent action between them, with respect to any issue. actually litigated and determined if its determination was- es- . sential to that judgment.
The Louisiana doctrine of res judi-cata was amended in 1990 by adopting issue preclusion or collateral estoppel, which precludes re-litigation of an issue previously decided by a final judgment. Maschek v. Cartemps USA, 04-1031, p. 5 (La.App. 4 Cir. 2/16/05), 896 So.2d 1189, 1193. As the Official Comments note, the 1990 amendments to La. R.S. 13:4231 “makes a substantial change in the law,” as under the prior statute, “a second 'cause of action would be barred by the defense of res judicata only when the plaintiff seeks the same relief based on the same cause of action or grounds.” Oliver v. Orleans Parish School Bd., 14-0329, 140330 at p. 21. Under the 'amended statute, '“[t]he central inquiry is ... whether the second action asserts a cause of action which arises out of the transaction ■ or or occurrence which was the subject matter of'the first action.” Id. “This serves the purpose of judicial economy and fairness by requiring the 'plaintiffs’ to seek all relief and to assert all rights which arise out of the same transaction-or occurrence.” Id.
Public policy favors compromise agreements and the finality of settlements. Brown v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741, 757. Louisiana law defines a compromise as a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship. La. C.C. art. 3071. The ■ Louisiana Supreme Court noted in Trahan v. Coca Cola Bottling Co. United Inc., 04-100, p. 10 (La.3/2/05), 894 So.2d 1096, 1104, that Article 3071 requires the presence of two elements for a valid compromise: “(1) mutual intention of preventing or putting an end to the Mitigation, and (2) reciprocal concessions of the parties to adjust their differences.” See Rein v. Edwards, 05-754 (La. App. 3 Cir. 2/1/06), 921 So.2d 1158, 1160.
A compromise precludes the parties from bringing a subsequent. action based upon the matter that was compromised. La. C.C. art. 3080. This preclu-sive effect of a compromise can be raised in a peremptory exception, under Louisiana Code of -Civil Procedure Article 927. See La. C.C. art. 3080, part (a) of Revision Comments — 2007. A valid compromise may form the basis of a plea of res judica-ta. Rein v. Edwards, 921 So.2d at 1160, citing Rivett v. State Farm Fire Cas. Co., 508 So.2d 1356, 1359 (La.1987); see also Brown v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741. A release executed in exchange for consideration is a compromise. Brown v. Drillers, Inc., 630 So.2d at 741.
In the instant case, Mr. Contogour-is.and Mr. Baldwin, concede that they executed the transfer agreement which barred certain claims. Because Mr. Contogouris and Mr. Baldwin failed, to have the transfer agreement rescinded in the federal case, the transfer agreement has been found to be valid and enforceable. The issue now is whether the language of the transfer applies to bar the claims against Mr. Hóughtaling and GHW.
In Burguieres v. Pollingue, 02-1385 (La.2/25/03), 843 So.2d 1049, 1052-53, the Louisiana Supreme Court set out five prerequisites for a finding of res judicata under La. R.S. 13:4231: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of the final judgment in the first litigation; and (5) the.causes of action asserted in the second suit arose out *23 of the transaction or occurrence that was the subject matter of the first litigation.
| sIn the instant case, the first two factors are clearly met; the judgment in the federal lawsuit was a valid and it was a final judgment. We will now examine the following three factors.
Mr. Contogouris and Mr. Baldwin were parties to the transfer agreement, as was Mr. Houghtaling as a “Remaining Member” and “Releasee.” To fulfill the “same party” requirement it is only necessary that the parties “appear in the same capacities in both suits.” Id. at 1054. When there is sufficient privity between the arties in the first and second actions, Louisiana courts have applied' res judicata based on the reasoning that ‘the nonparty’s interests were adequately represented by a party to the action who may be considered the “virtual ‘representative’ of the nonparty because the interests of the party and the nonparty are so closely aligned.” Forum for Equality PAC v. McKeithen, 04-2551 (La.1/19/05), 893 So.2d 738, 745. Mr.- Contogouris and Mr. Baldwin sued Mr. Houghtaling, a member and attorney of OTS, who was in privity with and served in the same capacity as Westpac in the previously adjudicated federal suit. Furthermore, the claims of misrepresentation asserted by Mr.- Contogour-is and Mr. Baldwin in this action not only arise out of the same transaction or occurrence, but are nearly identical to those alleged in the Westpac suit. Accordingly, the trial court correctly found issue preclusion applied in this case.
Mr. Contogouris’s and Mr. Baldwin’s claims of legal malpractice and breach of fiduciary duty also existed at the time they executed the transfer agreement. In their petition, they acknowledge they signed the transfer agreement on June 11, 2010, having had actual knowledge of the facts underlying the claims they now assert, specifically the alleged failure- to keep Mr. Contogouris and Mr. Baldwin informed of negotiations with BP. These facts were proven in the Westpac Rlawsuit. Accordingly, the causes of action asserted by Mr. Contogouris and Mr. Baldwin arose from operative facts existing at the time of the negotiations and the sale of their membership interests in ÓTS.
All of the allegations against Mr. Houghtaling (including the claims for legal malpractice against him and GHW) arise from his actions within OTS or as part of the joint venture regarding OTS, whether as a member of OTS or as a lawyer. Mr. Contogouris’s and Mr. Baldwin’s claims in the instant suit form part of the same transaction, or occurrence of those claims defined under sections '10 and 11 of the transfer agreement. The transfer agreement specifically releases the “Remaining Members” and their “attorneys.”[3].- Accordingly, the fifth factor set forth in Bur-guieres is satisfied and res judicata applies.
CONCLUSION
For the above and foregoing reasons, we affirm the trial court’s maintaining of the exception of res judicata raised by Mr. Houghtalingand GHW..
*24 AFFIRMED

. Mr. Levy also ultimately withdrew from OTS but his withdrawal is not at issue in this case.

. Prior to the instant lawsuit, the plaintiffs also had pending a similar lawsuit against OTS in the 25th Judicial District Court in Plaquemines Parish. John Houghtaling and Gauthier, Houghtaling and Williams LLP. In that case, the defendants filed an exception of improper venue. In a judgment dated February 1, 2012, Judge Michael Clement granted the exception and transferred the case to the Civil District Court for the Parish of Orleans.

. The transfer agreement calls for a release of all "Claims” that relate to-or are in connection with: (a) the organization and operation of OTS (including without limitation, the OTS articles of organization and the operating agreement and all contracts, agreements, or arrangements entered into by or on behalf of OTS); and (b) the proposed joint venture and any actions taken, negotiations held or proposals made with respect to the proposed joint venture.' The released "Claims” also include all claims of any kind, whether known or unknown at the time of the release.