| TRAMOND BOURGEOIS | * | NO. 2020-CA-0170 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| SELECT OILFIELD | * | |
| SERVICES, LLC AND FAB-CON, INC. | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

| CONSOLIDATED WITH: | CONSOLIDATED WITH: |
|---|---|
| JOSEPH BARTHOLOMEW | NO. 2020-CA-0171 |
| VERSUS | |
| SELECT OILFIELD SERVICES, LLC AND FAB-CON, INC. | |

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. 62-034, DIVISION "B"
Honorable Michael D. Clement,
* * * * * *
**Judge Tiffany G. Chase**
* * * * * *

(Court composed of Judge Paula A. Brown, Judge Tiffany G. Chase, Judge Dale N. Atkins)

Lawrence Blake Jones
David C. Whitmore
Patrick J. Eskew
BLAKE JONES LAW FIRM, LLC
701 Poydras Street, Suite 4100
New Orleans, LA 70139

     COUNSEL FOR PLAINTIFF/APPELLEE

Gavin H. Guillot
Salvador J. Pusateri
Elizabeth B. McIntosh
PUSATERI JOHNSTON GUILLOT & GREENBAUM, LLC
1100 Poydras Street, Suite 2550
New Orleans, LA 70163

     COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**
**October 07, 2020**

*TGC*
*PAB*
*DNA*

Select Oilfield Services, LLC (hereinafter "Select") challenges the trial court's September 27, 2019 judgment based on (1) collateral estoppel; (2) excessive future lost wage damages; and (3) insufficient evidence of medical causation. After consideration of the record before this Court and the applicable law, we affirm the judgment of the trial court.

### Facts and Procedural History

On May 31, 2014, Tramond Bourgeois (hereinafter "Mr. Bourgeois") was injured while working on an offshore project for his employer Fab-Con, Inc. (hereinafter "Fab-Con"). Mr. Bourgeois was a passenger on the Select 105, a vessel owned and operated by Select. An employee of Select was controlling the vessel when it capsized as the vessel was lowered into the water. When the vessel capsized, one of the bottle racks aboard hit the inside of Mr. Bourgeois' ankle and a valve hit his right shoulder and back.

Mr. Bourgeois filed two actions as a result of the May 31, 2014 accident: (1) a claim for benefits under the Longshore and Worker's Compensation Act (hereinafter "LHWCA") in federal court and (2) a petition for damages under the Jones Act and general maritime law in state court.

## Longshore and Harbor Worker's Compensation Claim

Mr. Bourgeois filed a claim for benefits under the LHWCA, 33 U.S.C. § 901, *et seq.*, against Fab-Con, and its insurance carrier, with the United States Department of Labor.[1] He sought compensation as a result of being injured while working on a vessel in navigable waters. He alleged that the work accident resulted in injuries to his right shoulder, lower back, right ankle and caused post-traumatic stress disorder. He sought temporary and total disability benefits.[2]

On July 14, 2017, the administrative law judge (hereinafter "ALJ") conducted a formal hearing on Mr. Bourgeois' claims. On February 6, 2018, the ALJ issued a decision, finding Mr. Bourgeois sustained a right ankle sprain; right shoulder tendinitis and AC joint[3] sprain; and low back muscle spasms as a result of the accident. He also found that Mr. Bourgeois' right shoulder labrum tear and post-traumatic stress disorder were not attributed to the accident. A further determination was made that Mr. Bourgeois was temporarily and totally disabled from June 1, 2014 through November 4, 2014, awarding indemnity temporary disability benefits, based on the average weekly wage of $445.95. Mr. Bourgeois was also awarded medical expenses incurred as a result of medical treatment from May 31, 2014 through November 4, 2014. Mr. Bourgeois appealed the decision to the Benefits Review Board. He sought review of the $445.95 average weekly wage amount awarded and the finding that he did not suffer a labrum tear to the right

---

[1] As Select was not Mr. Bourgeois' employer, he did not name it as a party to the worker's compensation claim.

[2] Specifically, Mr. Bourgeois sought temporary total indemnity benefits from May 31, 2014 and ongoing, claiming he did not reach maximum medical improvement and Fab-Con failed to identify suitable alternate employment.

[3] Acromioclavicular joint.

shoulder. The Benefits Review Board affirmed the ALJ's decision and order on November 5, 2018, and Mr. Bourgeois' motion for reconsideration was denied.

Mr. Bourgeois filed a petition for review with the United States Court of Appeals, Fifth Circuit, seeking review of the decision of the Benefits Review Board. On January 2, 2020, the petition for review was denied by the Court of Appeals.

### General Maritime Law Claim

On March 9, 2015, Mr. Bourgeois filed a petition for damages in 25th Judicial District Court for the Parish of Plaquemines, under the Jones Act, 46 U.S.C. § 30104, and general maritime law against Fab-Con[4] and Select.[5] The petition for damages provided that Select was the owner and operator of the vessel that capsized and caused the accident. Mr. Bourgeois sought general, specific and punitive damages. He also sought maintenance and cure benefits, arguing that he was rendered unfit for duty as a seaman as a result of the accident. On May 6, 2015, Select answered Mr. Bourgeois' petition.

On June 1, 2018, Select filed a motion for partial summary judgment basing its argument on the doctrine of collateral estoppel (issue preclusion). It argued that Mr. Bourgeois was precluded from re-litigating the same issues in state court against Select, the owner and operator of the vessel, that were already decided by the ALJ against his employer, Fab-Con. Select maintained that the ALJ rendered a factual finding that Mr. Bourgeois' labrum tear to the right shoulder, 2017 surgery to repair the right shoulder labrum tear and post-traumatic stress disorder were not

---

[4] Fab-Con was voluntarily dismissed from the litigation by order dated September 4, 2015.

[5] Joseph Bartholomew also filed a petition for damages as a result of the May 31, 2014 accident. The parties filed a joint motion to dismiss the appeal of Mr. Bartholomew, which was granted by this Court. Therefore, he is no longer a party on appeal.

caused by the accident. Thus, Select argued that there was no genuine issue of material fact attributing those injuries to the accident because that claim was already adjudicated by the ALJ.

Mr. Bourgeois opposed the motion for partial summary judgment, arguing that the decision of the ALJ was not, at the time, a final judgment because he had not exhausted all appellate remedies. Therefore, the defense of collateral estoppel was inapplicable and genuine issues of material fact remained surrounding his injuries as a result of the accident. The motion was heard by the trial court on August 9, 2018. By judgment dated August 22, 2018, the trial court denied Select's motion for partial summary judgment.[6]

A four-day bench trial commenced on August 20, 2018, at which damages was the only issue to be decided by the trial court.[7] After taking the matter under advisement, the trial court entered judgment on September 27, 2019, in favor of Mr. Bourgeois. The trial court found that Mr. Bourgeois' injuries, specifically, the labrum tear to the right shoulder, back injuries, right ankle injury and post-traumatic stress disorder, were causally related to the accident. The trial court awarded Mr. Bourgeois the following damages: (1) $250,000.00 in past and future physical and mental pain and suffering; (2) $149,639.00 in past wage loss; (3) $657,348.00 in future wage loss/loss of earning capacity; and (4) $65,685.08 in past medical expenses. For a total of $1,122,672.08 in damages.

This appeal followed.

---

[6] The trial court's judgment also denied Mr. Bourgeois' motion for partial summary judgment; granted Select's motion for leave to supplement affirmative defenses; and granted Select's motion to permit testimony of medical witnesses.

[7] On August 20, 2018, Select filed an Admission whereby it admitted that the negligence of Select's employee caused the barge to founder.

## Discussion

Select asserts multiple assignments of error which, collectively, challenge the trial court's judgment on three grounds: (1) under the doctrine of collateral estoppel, the trial court was precluded from awarding damages beyond those awarded by the ALJ; (2) the evidence does not support the amount of future lost wages awarded; and (3) the evidence does not support a finding that the accident caused Mr. Bourgeois' labrum tear to the right shoulder and post-traumatic stress disorder.

In addressing each of the issues, we organize our review into the following sections: collateral estoppel, future lost wages and medical causation.

### Standard of Review

When the issue of *res judicata* is raised prior to the submission of a case and evidence is received from both parties, manifest error is the applicable standard of review on appeal. *New Orleans Jazz & Heritage Found., Inc. v. Kirksey*, 2012-0202, p. 3 (La.App. 4 Cir. 11/30/12), 104 So.3d 714, 716.

An award of special damages and review of claims filed under general maritime law are also subject to a manifest error standard of review. *See McCloskey v. Higman Barge Lines, Inc.*, 2018-1008, p. 4 (La.App. 4 Cir. 4/10/19), 269 So.3d 1173, 1178; *Younce v. Pacific Gulf Marine, Inc.*, 2007-421, p. 11 (La.App. 5 Cir. 1/22/08), 977 So.2d 117, 127 ("Louisiana courts of appeal should apply the state manifest error standard of review in general maritime and Jones Act cases."). Additionally, a trial court's findings of fact are reviewed under a manifest error or clearly wrong standard of review and issues of law are reviewed for a determination of whether the trial court's decision is legally correct. *Duhon v. Briley*, 2012-1137, pp. 3-4 (La.App. 4 Cir. 5/23/13), 117 So.3d 253, 257-258.

6

**Collateral Estoppel**

Select maintains that the trial court erred in failing to apply the doctrine of collateral estoppel because the issues decided by the ALJ were the same issues decided in state court. Conversely, Mr. Bourgeois asserts that the ALJ decision is not a final judgment because under the LHWCA, modification of the decision is always possible. He asserts that he can request a modification within one year of the decision on his appeal and thus, the decision is not final because it is still currently subject to modification.[8]

In a footnote in its reasons for judgment, the trial court stated:

> Select asserts that Bourgeois' claims are barred by issue preclusion based on rulings by an administrative law judge and the Benefits Review Board which denied his LHWCA claims beyond November 4, 2014. These rulings are still on appeal to the United States Fifth Circuit Court of Appeal; therefore issue preclusion does not apply because the rulings are not final.

Collateral estoppel is a closely linked concept of *res judicata*. Federal law includes both claim preclusion (true *res judicata*) and issue preclusion (collateral estoppel). *Morales v. Par. of Jefferson*, 2010-0273, p. 6 (La.App. 5 Cir. 11/9/10),

---

[8] 33 U.S.C. § 922 provides, in pertinent part:

> Upon his own initiative, or upon application of any party in interest (including an employer or carrier which was granted relief under section 908(f) of this title), on the ground of a change in conditions or because of a mistake in a determination of fact by the deputy commissioner, the deputy commissioner may, at any time prior to one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one year after a rejection of a claim, review a compensation case (including a case under which payments are made pursuant to section 944(i) of this title) in accordance with the procedure prescribed in respect of claims in section 919 of this title, and in accordance with such section issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award of compensation.

7

54 So.3d 669, 672-73. Additionally, "[t]he Louisiana doctrine of *res judicata* was amended in 1990 by adopting issue preclusion or collateral estoppel, which precludes re-litigation of an issue previously decided by a final judgment." *Contogouris v. Ocean Therapy Sols., LLC*, 2015-0472, p. 6 (La.App. 4 Cir. 1/27/16), 187 So.3d 18, 22. Under the doctrine of collateral estoppel, the issue must be identical in both actions, actually litigated in the prior action and the determination of the issue in the prior action must have been a necessary part of the judgment in that action. *Richards v. Board of Comm'rs of the Port of New Orleans*, 2010-1171, p. 4 (La.App. 4 Cir. 2/2/11), 57 So.3d 1135, 1139. As this Court has previously held, "[t]he central inquiry is… whether the second action asserts a cause of action which arises out of the transaction or occurrence which was the subject matter of the first action." *Contogouris*, 2015-0472, p. 6, 187 So.3d at 22. Once a court decides an issue, necessary to its judgment, that issue is precluded from being re-litigated in a different cause of action. *Mandalay Oil & Gas, L.L.C. v. Energy Development Corp.*, 2001-0993, p. 9 (La.App. 1 Cir. 8/4/04), 880 So.2d 129, 136. "This serves the purpose of judicial economy and fairness by requiring the plaintiff to seek all relief and to assert all rights which arise out of the same transaction or occurrence." *Terrebonne Fuel & Lube Inc. v. Placid Refining Co.*, 1995-0654, p. 12 (La. 1/16/96), 666 So.2d 624, 632 (quoting Comments-1990, La. R.S. 13:4231). As such, in order for the effects of collateral estoppel to be applicable, the issue of the causes of action must be identical and the determination of that issue must have been necessary to the court's judgment.

In the case *sub judice*, Mr. Bourgeois posits two separate and distinct claims: (1) a claim for compensation disability benefits against his employer and (2) a tort negligence claim against the owner and operator of the vessel. A claim for

compensation disability benefits filed under the LHWCA presents a different claim than a tort negligence claim. The LHWCA provides an employee with an exclusive remedy, against an employer, for injuries which occurred during the course and scope of employment. *Cortez v. Total Transp., Inc.*, 577 So.2d 292, 296 (La.App. 5th Cir. 3/13/91) (citing 33 U.S.C. § 905(a)). "In particular, the LHWCA embodies the heart of the worker's compensation 'bargain': The employee receives the certainty of a specified benefit but forgoes a tort action and the employer incurs liability for the specified benefit but avoids the risk of a tort action.'" *Taylor v. Transocean Terminal Operators, Inc.*, 2000-0604, p. 6 (La.App. 4 Cir. 3/14/01), 785 So.2d 860, 864. "The LHWCA provides the means for obtaining and enforcing compensation benefits under its statutory framework." *Davis v. Aetna Cas. And Sur. Co.*, 2002-0028, p. 3 (La.App. 4 Cir. 4/17/02), 820 So.2d 568, 570 (citing 33 U.S.C. § 919). The claims filed in worker's compensation court were against Mr. Bourgeois' employer and involved injuries sustained during the course and scope of his employment.

Conversely, the claims filed in Mr. Bourgeois' state court action involved the negligence of the owner and operator of the vessel and he sought damages as a result of that negligence. "[I]n addition to a compensation claim against his employer, a longshore or harbor worker may bring an action… against a vessel owner as a third party to recover damages for an injury caused by the negligence of the vessel." *Orgeron v. Avondale Shipyards, Inc.*, 561 So.2d 38, 41 (La. 1990); *See also* 33 U.S.C. § 905(b). An action for negligence is the exclusive remedy for a longshoreman's personal injury claim against a vessel owner. *Poole v. Quality Shipyards, Inc.*, 1995-1331, p. 3 (La.App. 4 Cir. 1/19/96), 668 So.2d 411, 413. Mr. Bourgeois' petition for damages cites to general maritime law, thus the trial court

analyzed the claims under tort principles. *See Torrejon v, Mobile Oil Co.*, 2003-1426, p. 20 (La.App. 4 Cir. 6/2/04), 876 So.2d 877, 891. Since negligence was not in dispute, the only issue to be decided by the state court was Mr. Bourgeois' right to recover damages as a result of the injuries sustained in the accident. The factual determination of his injuries under tort principles against the vessel owner was not before the ALJ.

"Inherent in the concept of *res judicata* is the principle that a party had the opportunity to raise the claim in the first adjudication." *Terrebonne Fuel*, 1995-0654, p. 16, 666 So.2d at 634. Mr. Bourgeois' negligence claim for damages could not have been asserted in his claim for compensation disability benefits because the claim for compensation disability benefits are exclusive to his employer and Select is not his employer. As such, the factual determinations by the ALJ are not *res judicata* and cannot be collaterally estopped.

We find the claims filed under LHWCA in worker's compensation court and state court are two separate claims subject to factual determinations by the fact finder and thus, are not subject to the doctrine of collateral estoppel. Mr. Bourgeois sought compensation disability benefits in worker's compensation court and negligence damages against the vessel owner in state court. Therefore, the trial court did not err in refusing to apply to the doctrine of collateral estoppel.

Likewise, the decision of the ALJ was not a final judgment at the time of trial. When the state court rendered its judgment, the United States Court of Appeals, Fifth Circuit, decision had not been rendered. The state court rendered its judgment on September 27, 2019, while the United States Court of Appeals, Fifth Circuit, issued its decision on January 2, 2020. Collateral estoppel, as a subset of *res judicata*, is a final judgment that disposes of the merits of an issue in whole or

in part. *See Wooley v. State Farm Fire & Cas. Ins. Co.*, 2004-0882, p. 36 (La. 1/19/05), 893 So.2d 746, 771. Without a decision from the United States Court of Appeals, Fifth Circuit, the judgment from the ALJ was not dispositive of those issues raised in worker's compensation court and thus, not final at the time the trial court rendered its judgment. Thus, we find no merit to this argument and find that the trial court did not err in finding the doctrine of collateral estoppel inapplicable.

**Future Lost Wages**

Special damages include medical expenses and lost wages. *McCloskey*, 2018-1008, p. 4, 269 So.3d at 1178 (quoting *Kaiser v. Hardin*, 2006-2092, p. 11 (La. 4/11/07), 953 So.2d 802, 810). "The appellate court must first conclude that no reasonable factual basis exists for the trial court's award and secondly, that the award is clearly wrong." *Id.*, 2018-1008, p. 5, 269 So.3d at 1178.

Select argues that the trial court's future lost wages award, in the amount of $657,348.00, is excessive and not supported by the evidence. It maintains that the evidence establishes that Mr. Bourgeois could return to a job earning more than he previously earned at Fab-Con and that he was not entitled to the rate used by the trial court because of his prior earning history.

"A trial court has broad discretion in assessing awards for lost earnings, but there must be a factual basis in the record for the award." *Burch v. SMG, Schindler Elevator Corp.*, 2014-1356, p. 13 (La.App. 4 Cir. 4/7/16), 191 So.3d 652, 662.

To support his claim for future lost wages, Mr. Bourgeois retained Glenn Herbert, a vocational rehabilitation expert. Mr. Herbert reviewed Mr. Bourgeois' medical records from Plaquemines Medical Center, Dr. Allen Johnston at B.R.A.S.S. Surgery Center and Dr. William Alden at Westbank Physicians Rehab. Mr. Herbert testified that he conducted a test and interview with Mr. Bourgeois as

11

part of his process. Mr. Herbert noted that at the time of the accident, Mr. Bourgeois earned $11.00 an hour and had an earning capacity of approximately $41,613.00 a year. Mr. Herbert further testified that after the accident Mr. Bourgeois' earning capacity was reduced to $8.50 an hour, which equates to approximately $17,500.00 a year. Mr. Herbert opined that due to his injuries, Mr. Bourgeois' work life expectancy was reduced anywhere between 9.2 and 11.8 years.

Mr. Bourgeois also retained Dr. Randolph Rice, an economist expert. In preparing his report, Dr. Rice was provided with copies of Mr. Bourgeois' Fab-Con paycheck, his social security earnings and the report from Mr. Herbert. Dr. Rice's report provides that Mr. Bourgeois' future work life expectancy is 29.16 years. He also took into account Mr. Bourgeois' reduced work life expectancy of anywhere between 9.2 and 11.8 years, as provided by Mr. Herbert. Dr. Rice calculated Mr. Bourgeois' future earning capacity using a base annual income of $40,532.38, which equates to $944,250.00 after taxes. His report provides that if Mr. Bourgeois returned to work earning $8.50 per hour, working 40 hours per week, for the reduced work life expectancy of 18.66 years, the diminution of his earnings equates to $657,348.00 (applying a gross below market discount rate).

Based on the record before this Court, we find that a reasonable basis exists for the trial court's award. The trial court found the testimony and documentation of Mr. Herbert and Dr. Rice credible and relied on it in awarding future lost wages. Given the trial court's broad discretion in awarding lost wages, the award will not be disturbed on review.

**Medical Causation**

Select maintains that no reasonable factual basis exists for a finding that Mr. Bourgeois' right shoulder labrum tear, lumbar injury and post-traumatic stress disorder were caused by the accident. Additionally, Select argues that the March 2, 2017 surgery of Mr. Bourgeois' right shoulder was not the result of his injuries from the accident.

Under general maritime law, the standard tort proximate cause analysis is applicable. *Torrejon, supra*. In tort actions, it is the burden of the plaintiff to prove, by a preponderance of the evidence, that the accident caused the claimed injury. *Williams v. Stewart*, 2010-0457, p. 6 (La.App. 4 Cir. 9/22/10), 46 So.3d 266, 271. "The test for determining the causal relationship between an accident and a subsequent injury is whether the plaintiff proved through medical and lay testimony that it is more probable than not that the subsequent injuries were caused by the accident." *Id.*, 2010-0457, p. 6, 46 So.3d at 272. In determining causation, "[e]xpert medical testimony is only required when the conclusion regarding medical causation is one that is not within common knowledge." *Id.*, 2010-0457, p. 8, 46 So.3d at 273 (quoting *Newsome v. New Orleans Saints*, 2008-311, p. 7 (La.App. 5 Cir. 10/14/08), 996 So.2d 637, 640.)

Mr. Bourgeois testified that when the vessel capsized, one of the bottle racks hit the inside of his ankle and a valve hit his right shoulder and his back. At that point, he fell down onto the vessel. Mr. Bourgeois also testified that he began suffering from nightmares, anxiety and depression as a result of the accident.

Mr. Bourgeois' treating physician, Dr. William Alden, testified that Mr. Bourgeois first presented on June 3, 2014, for treatment for injuries from the accident. Dr. Alden provided that the clinical impressions for Mr. Bourgeois were

right shoulder strain and lumbar strain. Mr. Bourgeois was last seen by Dr. Alden on June 11, 2014, at which point he received injections for his pain and obtained a referral for a MRI[9]. Dr. Alden concluded that the accident more likely than not caused Mr. Bourgeois' injuries.

Dr. Allen Johnston, Mr. Bourgeois' orthopedic surgeon, stated that he first saw Mr. Bourgeois on July 28, 2014. Dr. Johnston reviewed the two MRI's of Mr. Bourgeois' injuries completed on June 2, 2014 and June 24, 2014. He testified that the shoulder MRI showed a labral tear, AC joint injury and tendinitis in the rotator cuff. Dr. Johnston further opined that the back MRI showed straightening of the lumbar lordosis and spasm and that the MRI of the ankle was normal but, his physical examination of the ankle demonstrated swelling over the outside of the ankle.

Dr. Johnston testified that due to Mr. Bourgeois' shoulder pain he recommended a right shoulder arthroscopic decompression and AC joint reaction surgery (arthroscopy of the shoulder). Mr. Bourgeois' surgery occurred on March 2, 2017. Dr. Johnston determined that the initial need for the shoulder surgery was the AC joint injury. However, a subsequent review of the previous shoulder MRI suggested a labral tear and once he proceeded to do the joint resection, he corrected the labrum. Mr. Bourgeois was last seen by Dr. Johnston in January 2018.

Mr. Bourgeois testified that he treated with Dr. Beverly Howze regarding nightmares, anxiety and depression as a result of the accident. He stated that he treated with Dr. Howze over a dozen times and that she provided him with breathing techniques to assist with his anxiety. Dr. Howze diagnosed Mr. Bourgeois with post-traumatic stress disorder, anxiety, depression and chronic pain

---

[9] Magnetic Resonance Imaging.

syndrome. Her psychological report notes that due to Mr. Bourgeois' intellectual problems, he was unable to properly process the accident. The psychological report further provides that Mr. Bourgeois would require long-term support therapy, vocational rehabilitation and continued medical interventions. Dr. Howze's progress notes indicates the expectation of Mr. Bourgeois' anxiety when in contact with water. Additionally, Dr. Howze's treatment plan noted that once Mr. Bourgeois began psychotropic medication his therapy sessions became effective.

"[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La. 1993). Based upon the record before this Court, we find the trial court's determination, that the accident caused Mr. Bourgeois' right shoulder labrum tear, lumbar injury and post-traumatic stress disorder, is reasonably supported by the evidence. As such, the trial court's finding will not be disturbed upon review.

## Conclusion

For the reasons stated, we affirm the judgment of the trial court.

**AFFIRMED**